UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| ROBYN H. WILSON, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:06-CV-77 |
| | ) | |
| GMAC FINANCIAL SERVICES CORPORATION | ) ) | |
|     Defendant. | ) | |

## **MEMORANDUM OPINION**

This matter is before the Court on the motion for summary judgment filed by the defendant/counter-claimant, GMAC Financial Services Corporation ("GMAC"), [Doc. 50]. The plaintiff has responded, [Docs, 57, 58, 59],[1] and GMAC has replied. [Doc. 65]. For the reasons which follow, the motion will be granted in part and denied in part.

**I.    Procedural Background**

Plaintiff filed his complaint herein on April 20, 2006, asserting causes of action against GMAC in eleven (11) separately numbered counts. Plaintiff claimed violation of

---

[1] GMAC originally filed a Rule 12(b)(6) motion as to certain of the claims raised in plaintiff's complaint and then subsequently filed a motion for summary judgment on all claims. Plaintiff filed a response to both motions to which he attached numerous exhibits, including his own affidavit. GMAC moved to strike that response and the Magistrate Judge granted the motion because matters outside the pleadings are not considered in ruling on a Rule 12(b)(6) motion. The plaintiff subsequently filed a separate response to GMAC's Rule 12(b)(6) motion and that motion has been disposed of by the Court.

the Consumer Credit Protection Act (Count 1), violation of the Fair Debt Collection Practices Act (Count 2), violation of the Tennessee Consumer Protection Act (Count 3), conversion (Count 4), fraudulent inducement (Count 5), breach of contract (Count 6), intentional infliction of emotional distress (Count 7), negligent infliction of emotional distress (Count 8), fraud (Count 9), gross negligence (Count 10), and negligence (Count 11). This Court dismissed the claims of fraud, fraudulent inducement, violation of the Consumer Credit Protection Act and violation of the Tennessee Consumer Protection Act by order dated December 5, 2008. GMAC now seeks summary judgment on all remaining claims.

## II. **Factual Background**

Plaintiff has submitted his affidavit in opposition to summary judgment. As an initial matter, an affidavit offered in opposition to summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). Although plaintiff's affidavit states that "[plaintiff] has personal knowledge of the statements contained in [his] affidavit," [Doc. 58-2, ¶ 2], it also contains assertions made "to the best of my knowledge" and "to the best of my knowledge and recollection." [Id., ¶¶ 3-4]. It is doubtful such qualifying and equivocal language meets the "personal knowledge" standard of Rule 56. The defendant, however, has not moved to strike the affidavit on this basis and the overall context of the affidavit suggests

it is simply inartfully drafted. The Court, therefore, will assume that the contents of the affidavit are based on personal knowledge.

On June 15, 2000, the plaintiff, an employee of Pinkerton Chevrolet, Inc. ("Pinkerton") entered into a "Retail Instalment [sic] Sale Contract" ("contract") for the purchase from Pinkerton of a 2000 Chevrolet Monte Carlo. The contract provided for 35 monthly payments of $345.64 beginning on July 23, 2000, and a final payment of $14,089.83 on June 23, 2003.[2] Despite being entitled "Retail Instalment Sale Contract," the contract was in essence a lease agreement with an optional purchase at the end of the lease. Apparently through some error on the part of a Pinkerton employee, the year of the due date for the final option payment written on the contract was "2002 003". Plaintiff had the option under the contract to meet his obligation to make this final payment by choosing instead one of the options set forth on the reverse side of the contract. One of those options was to surrender (option to sell) the vehicle to Pinkerton, effectively causing the final payment to be paid in full. Pinkerson assigned the contract to GMAC.

GMAC asserts that plaintiff became delinquent in making the monthly payments required under the contract. Plaintiff, on the other hand, claims that he made all required monthly payments under the contract, and exercised his option on July 21, 2003, to return

---

[2] In the box on the contract titled "Federal Truth-In-Lending Disclosures," the contract provided a due date of "06/22/2002003." This typographical error is of no significance, however, since the date for the final payment can easily be calculated to be June 23, 2003, and the contract, in another place, clearly states the due date of the final payment as June 23, 2003.

the automobile to Pinkerton in lieu of making the final payment of $14,089.83. Plaintiff and GMAC then entered into a "refinancing agreement" (the "current contract") for the 2000 Chevrolet Monte Carlo on November 8, 2003, which terminated the option to sell the vehicle to GMAC and provided for sixty five (65) monthly payments of $344.87, beginning on December 23, 2003. The amount financed under the current contract was $17,140.17. The parties differ on the reason for the current contract. According to plaintiff, GMAC asserted, in October or November, 2003, that plaintiff had actually purchased the vehicle, rather than exercising the option to sell, and had claimed additional money due on the automobile. After threats of legal action from GMAC, plaintiff decided that it was in his best interest to execute the current contract. GMAC claims the current contract was a "renewal" granted after several extensions were granted for delinquent payments. Not surprisingly, plaintiff claims he timely made all payments under the current contract while GMAC claims repeated past due payments. GMAC, in fact, claims that the initial payment under the current contract-the December 23, 2003, payment-was not paid until January 12, 2004, something plaintiff denies.

 GMAC repossessed the vehicle on June 26, 2005, and sold it at auction on August 30, 2005, for $4,300.00, resulting in a claimed deficiency in the amount of $11,072.97. It is this amount GMAC seeks in its counter-complaint, plus interest and attorney's fees. Plaintiff claims that GMAC engaged in a course of harassment after the sale in an attempt to wrongfully recover the alleged delinquency, and wrongfully reported the repossessions

4

to the major credit bureaus, adversely affecting plaintiff's good credit rating. On September 1, 2005, plaintiff suffered a stroke, allegedly as a result of the stress occasioned by the conduct of GMAC. Plaintiff was hospitalized as a result of the stroke, incurred medical expenses, suffered both physically and emotionally, and sustained permanent bodily injury. Plaintiff alleges that he "suffered stress each time that GMAC demanded . . . return [of] the vehicle, [Doc. 58-2, ¶ 16], that the repossession "affected [his] marriage," [*Id.*, ¶ 17] and that he has not been able to replace the vehicle because of his impaired credit rating. Plaintiff seeks damages for the value of the property, compensatory damages and punitive damages.

### III. Summary Judgment Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained. In the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue

of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). The court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

      The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

### IV. Analysis

#### A. Violation of the Fair Debt Collection Practices Act (Count 2)

In Count 2, plaintiff asserts a claim under 15 U.S.C. § 1692 *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"). GMAC argues that the FDCPA claim fails because GMAC is not a "debt collector" for purposes of the FDCPA. The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The term "debt collector" has a particular meaning, however: It refers only to (1) persons attempting to collect debts owed to "another." *See Id.* § 1692(a)(6) ("the term 'debt collector' means any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."); *See MacDermid v. Discover Financial Services*, 488 F.3d 721 (6th Cir. 2007). "A creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts." *Stafford v. Cross Country Bank*, 262 F.Supp. 2d 776, 794 (W.D. Ky. 2003).

GMAC has filed the affidavit of Mark S. White, Unit Manager with Semperian, Inc., a wholly owned subsidiary of GMAC, which services GMAC's motor vehicle retail installment sale contract accounts. White states that GMAC does "not regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." [Doc. 50-3 at ¶ 4]. Plaintiff has made no effort to respond to White's affidavit and, in fact, concedes that GMAC is not a "debt collector" for purposes of the

7

FDCPA. GMAC's motion for summary judgment on plaintiff's FDCPA claim will, therefore, be GRANTED.

**B.     Intentional/Negligent Infliction of Emotional Distress (Counts 7 and 8), Negligence (Count 11) and Gross Negligence (Count 10)**

In Count 7, plaintiff asserts a claim for intentional infliction of emotional distress. Tennessee state courts recognize the tort of intentional infliction of emotional distress (also referred to as the tort of outrageous conduct). *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). The elements of the tort are: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Id.*; (*see also Medlin v. Allied Inv. Co.*, 217 Tenn. 469, 398 S.W.2d 270, 274 (1966).

In Count 8, plaintiff asserts a claim for negligent infliction of emotional distress. A claim for negligent infliction of emotional distress requires that the plaintiff establish the elements of a general negligence claim: (1) duty; (2) breach of duty; (3) injury or loss; (4) causation in fact; and (5) proximate causation. *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48 (Tenn. 2004), citing *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996). In addition, the plaintiff must establish the existence of a serious or severe emotional injury that is supported by expert medical or scientific evidence. *Id.*; *see also Ramsey v. Beavers*, 931 S.W.2d 527, 531-32 (Tenn. 1996).

Plaintiff concedes that his "claims under these theories fail," because he cannot

prove by expert evidence the existence of a serious or severe emotional injury. [Doc. 59, p.14].[3] He argues, however, that his "claims for negligence and gross negligence are still actionable." *Id*. Plaintiff asserts the existence of a duty based on the parties' contractual relationship and consumer/creditor relationship "with respect to matters arising out of that relationship." *Id*. at 14-15. He further asserts that GMAC has breached its duty "to take reasonable care not to harass people, to not report inaccurate information about people, to keep accurate records about people, to resolve complaints made to them about their actions, and to not repossess vehicles for which they have no contractual right to repossess." *Id.* at 15. Plaintiff claims damages for the loss of his vehicle, inconvenience from the loss and expenses related to the "wrongful" repossession.

GMAC responds that to the extent "[p]laintiff is asserting that GMAC's duty or duties in this case arose out of a contractual relationship with the Plaintiff," [Doc. 65, p.6], then a breach of that duty would sound in contract and not negligence. GMAC also argues that the damages sought by the plaintiff on his negligence claims are essentially the same as the damages which would flow from a breach of contractual obligation. Furthermore, GMAC argues that plaintiff has offered no proof as to causation for any serious personal injuries or permanent disability. While plaintiff concedes that his injury claim with

---

[3] Although plaintiff concedes that his claim for intentional infliction of emotional distress fails because he has no expert witness to testify as to the existence of a serious or severe emotional injury, a plaintiff in such a case is not normally required to prove his claims of serious mental injury by expert proof. *See Daily v. Gusto Records, Inc.*, 14 Fed. Appx. 579 (6th Cir. 2001) (unpublished); *Miller v. Willbanks*, 8 S.W.3d 607 (Tenn. 1999). However, since plaintiff concedes the claim and since plaintiff points to no serious or severe emotional injury, the claim will be dismissed.

9

respect to his alleged stroke cannot be maintained, he argues that he should, nevertheless, be permitted to "pursue other personal injury claims caused by the conversion, negligence, and gross negligence." [Doc. 57 at ¶ 6].

Plaintiff's filings in this litigation, including his complaint, are poorly drafted and he does not clearly and succinctly state the precise nature of his claims, making it very difficult for this Court to determine the exact nature of those claims. In many cases, plaintiff's pleadings are nonresponsive to the defendant's motion and, to a certain extent, suggest that plaintiff's counsel lacks familiarity with the federal rules of civil procedure and/or what it is necessary to prove in order to prevail on plaintiff's asserted causes of action. For instance, plaintiff asserts a negligence claim in a very generic sense and he never clearly identifies the nature of GMAC's alleged duty to him or the facts which give rise to a breach of that duty.

Giving the plaintiff the benefit of the doubt, however, it does appear that the plaintiff is asserting a negligence claim with respect to GMAC's actions in an attempt to collect its alleged debt, the lack of reasonable care in reporting accurate information to credit bureaus and inaccurate record keeping, all alleged to have resulted in injury to the plaintiff. To the extent his alleged injuries arise from the alleged breach by GMAC of its contractual obligations, this Court agrees that those claims sound in contract and not in tort. While the plaintiff needs to be prepared at trial to clearly set forth his claims of negligence and clearly identify his alleged losses to avoid a directed verdict, this Court

cannot say, based upon the record before it, that there is no genuine issue of material fact with respect to his negligence claim and GMAC's motion for summary judgment on the negligence claim will be denied.

To the extent, however, that plaintiff seeks damages which arise out of his contractual relationship with GMAC, then this Court agrees with GMAC that those would most appropriately be resolved through his breach of contract claim. Obviously, plaintiff will not be permitted to seek a double recovery for the damages he seeks. With respect to his claims for loss connected with his alleged personal injury, it is clear that his claims for serious personal injury and/or permanent disability fail for lack of expert testimony as to causation and GMAC is entitled to summary judgment as to those claims. To the extent plaintiff seeks to establish the existence and causation of "simple and routine" injuries where no expert medical testimony on the issue of causation is required, he will be permitted to do so. Plaintiff must be prepared at trial, however, to demonstrate that the injuries he claims fall within that category. Absent his ability to do so, he will also face a directed verdict as to these claims. Plaintiff is forewarned that vague allegations as to stress, humiliation and mental anguish will not suffice for proof of the existence of his injuries.

GMAC also claims that plaintiff has not alleged any acts on the part of GMAC which would rise to the level of gross negligence. To prevail on a claim of gross negligence in Tennessee, a plaintiff must demonstrate ordinary negligence and must then

prove that the defendant acted "with utter unconcern for the safety of others, or . . . with such a reckless disregard for the rights of others that a conscious indifference for consequences is implied in law," *Odum v. Haynes*, 494 S.W.2d 795, 807 (Tenn. App. 1972), or from "a conscious neglect of duty or callus indifference to consequences .... [or] such entire want of care as would raise a presumption of a conscious indifference to consequences," *Buckner v. Varner*, 793 S.W. 2d 939, 941 (Tenn. App. 1990) (quotation omitted, alteration in original).

Plaintiff responds to GMAC arguments by stating "if plaintiff has established a cause of action for negligence, it will inherently seem exceptionally difficult to conclude that plaintiff has not also established a cause of action for gross negligence." [Doc. 59 at p. 17]. Plaintiff's argument is completely specious and evidences a complete lack of understanding of the difference between simple negligence and gross negligence. As the Sixth Circuit has stated, "[n]egligence does not become 'gross' just by saying so." *Menuskin v. Williams*, 145 F.3d 755 (6th Cir. 1998), quoting *Jones v. Sherrill*, 827 F.2d 1102, 1106 (6th Cir. 1987). Plaintiff makes no attempt to identify any facts in this record which would establish gross negligence on the part of GMAC. The plaintiff has failed to show that there is a genuine issue of fact material to the determination of the claim of gross negligence and GMAC will be granted summary judgment as to the gross negligence claim.

In summary, GMAC's motion for summary judgment as to Counts 7 and 8 will be

12

granted, the motion for summary judgment as to Count 11 will be granted in part and denied in part and the motion for summary judgment as to Count 10 will be granted.

### C. Breach of Contract/Conversion

When all of the rhetoric of the parties respective filings is parsed, this case amounts to little more than a run of the mill breach of contract and/or conversion case. Each party asserts that it has fully complied with the contracts at issue in this case and that the other party has failed to do so. Plaintiff alleges that GMAC is guilty of the tort of conversion because it wrongfully and without legal authority repossessed the 2000 Chevrolet Monte Carlo which he had purchased. GMAC denies a wrongful repossession and alleges that plaintiff is now liable for the deficiency remaining after the repossessed automobile was sold at auction. This Court will not further review the parties' respective allegations in this regard. Suffice it to say that the parties strenuously disagree and that the record establishes that genuine issues of material fact exist with respect to the allegations of conversion and breach of contract. For that reason, GMAC's motion for summary judgment on the breach of contract and conversion claims will be denied, as will GMAC's motion for summary judgment on its counter-complaint.

### D. Punitive Damages

One last issue bears some discussion. Plaintiff seeks an award of punitive damages in this case "for the intentional actions of the Defendant[] and gross negligence and recklessness of the Defendant[']s actions." [Doc. 1, ¶ 62]. Punitive damages are available

13

under Tennessee law in only the most egregious of cases. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992). Punitive damages may be awarded only if the plaintiff has shown that a defendant has acted either intentionally, recklessly, maliciously, or fraudulently. *See Johnson v. Husky Industries, Inc.*, 536 F.2d 645 (6th Cir. 1976); T.P.I.-CIVIL 14.55, 7th Ed. Entitlement to punitive damages must be proved by clear and convincing evidence. *Hodges*, 833 S.W.2d at 901.

Once again, plaintiff's response with respect to his entitlement to punitive damages is somewhat cavalier. Plaintiff makes no real effort to point to evidence in the record which establishes, by clear and convincing evidence, his entitlement to punitive damages. His failure to do so is fatal. GMAC's motion for summary judgment as to plaintiff's punitive damage claim will be GRANTED.

### V. Conclusion

For the reasons set forth herein, GMAC's motion for summary judgment, [Doc. 50], will be GRANTED IN PART and DENIED IN PART. In summary, the motion for summary judgment will be GRANTED as to plaintiff's claim of violation of the FDCPA, his claims of intentional and/or negligent infliction of emotional distress, his claims for gross negligence and punitive damages, and his claim for losses for serious bodily injury and permanent disability. The motion for summary judgment will be DENIED as to plaintiff's claims for negligence, conversion and breach of contract and the damages flowing naturally therefrom, including such personal injury as is the proper subject of lay

testimony.

So Ordered.

ENTER:

                                          s/J. RONNIE GREER
                                 UNITED STATES DISTRICT JUDGE